# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CARRIE RADFORD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 4:17CV2561 RLW |
| | ) |
| NANCY BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is a *pro se* action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Carrie Radford's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Because the Appeals Council denied Plaintiff's Request for Review, the decision by the Administrative Law Judge ("ALJ") is the final decision of the Commissioner. For the reasons set forth below, the Court affirms the decision of the Commissioner.

## I. Procedural History

Plaintiff protectively filed an application for SSI on May 6, 2014.[1] (Tr. 132) She alleged disability beginning April 21, 2014. (Tr. 132) Plaintiff's claims were initially denied on June 18, 2014 (Tr. 81), and she filed a request for a hearing before an ALJ (Tr. 88). On May 23, 2016, Plaintiff testified at a hearing before the ALJ. (Tr. 25-48) In a decision dated August 2, 2016, the ALJ determined that Plaintiff had not been under a disability from April 21, 2014 through the date of the decision. (Tr. 488-504) On July 10, 2017, the Appeals Council denied

---

[1] Previously, Plaintiff had protectively filed an application for SSI in October 22, 2012 due to disability beginning April 30. 2006. (Tr. 52) That claim was denied initially on January 15, 2013, and she filed a written request for a hearing on January 30, 2013. (Tr. 52) After a video hearing was conducted on January 9, 2014, that ALJ determined Plaintiff was not disabled under the Act and denied benefits. (Tr. 60) She does not appear to have sought review of that determination before the Appeals Council.

Plaintiff's request for review. (Tr. 8-14) On September 19, the Appeals Council set aside its previous action to consider additional information Plaintiff provided. (Tr. 1-7) Again, the Appeals Council found no reason under its rules to review the ALJ's decision. (Tr. 1) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the May 23, 2016 hearing before the ALJ, Plaintiff appeared with counsel. (Tr. 25-28) Plaintiff testified she was 31 years old at the time of the hearing. She further stated she lived in a house with her mother and her two children (ages 12 and 10) and has done so for almost five years. Plaintiff did not have a driver's license and did not plan to get one, but she claimed she previously had a driver's license and would be able to obtain one. The highest grade level she completed was 11th grade, and she did not attempt to obtain a GED because she was too busy with her children. Plaintiff asserted that despite some difficulty with reading comprehension she is capable of simple math. (Tr. 30-33)

Plaintiff testified she was not currently working. Her sources of income included a monthly check for $58 through her husband's disability[2] and temporary government assistance for her and her children. Plaintiff's mother worked full-time and her children both attend school. Plaintiff stated the last time she worked was when she was 14 years old. When she and her husband lived together for nine years when she was between the ages of 17 and 27, she was a stay-at-home mom. Since then, Plaintiff testified she has not tried to find work because she has "too many pains." Specifically, she cited her back, depression, Major Depression, and now a foot injury. (Tr. 33-34)

At the hearing, Plaintiff testified she was currently using a walking boot. She had surgery on February 9, 2016 during which ten screws and a four-inch plate were inserted on her

---

[2] Plaintiff testified she is legally married (Tr. 31), although she does not live with her husband.

2

right ankle. She further stated her depression prevents her from doing a lot of things besides simple tasks around the house to help her mother. These tasks include cooking for her children and folding laundry. (Tr. 34-36)

Next, the ALJ proceeded to ask Plaintiff questions regarding a list of medications. Plaintiff stated she takes two medications for her gallbladder. She also takes Gabapentin for her nerves and lower back pain she says is a result of delivering her youngest child in 2006. Further, arthritis in her lower spine causes it to pop. Specifically regarding her ankle injury, Plaintiff stated she no longer used crutches and was not prescribed physical therapy as long as she wore the walking boot. (Tr. 36-37)

Plaintiff testified she used various antidepressants over the years, including Effexor and Lithium. She claim the Lithium made her suicidal so she stopped taking it without being directed by her doctor. Plaintiff stated she had been hospitalized three times for suicide attempts, most recently in March of 2015 after overdosing on Klonopin. The ALJ asked what follow-up treatment she underwent, and Plaintiff stated she took the medication as prescribed by doctors at the hospital. Plaintiff further testified she continued to see a psychiatrist every two months.[3] (Tr. 38-42)

During examination by her attorney, Plaintiff stated she did not think she could work a full-time job. She cited her inability to sit or stand for too long due to her back injury and claimed she does not get along with new people well which leads to depression. According to Plaintiff, she spends most of her time on a typical day at home, sitting in her recliner, taking her medication as prescribed, and "in her own mind." (Tr. 42-44)

---

[3] Initially, she was being treated by Dr. Nancy McNail. However, after Dr. McNail herself had back surgery, Plaintiff began seeing Dr. Bello Adejoh. (Tr. 38-42)

3

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience who can work at a light exertional level as defined in the regulations with the following limitations: occasionally climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. Further, the hypothetical individual should be able to complete simple, routine tasks in a work environment free of fast-paced productivity requirements involving simple work-related decisions with few work place changes and is able to interact appropriately, occasionally, with the general public, coworkers, and supervisors. Given the hypothetical, the VE testified that nationally there are approximately 384,000 light, unskilled cleaner positions; approximately 326,000 light, unskilled hand packer positions; and approximately 228,000 production worker assembler positions. (Tr. 44-46)

The ALJ asked the VE to assume a second hypothetical individual with the same characteristics as the first except to assume this hypothetical individual can work at a sedentary level as defined in the regulations. The VE testified that nationally there are approximately 22,000 unskilled hand packer positions; approximately 29,000 sedentary, unskilled production worker assembler positions; and approximately 17,000 sedentary, unskilled surveillance system monitor positions. (Tr. 46)

Lastly, the AJL asked the VE to assume a third hypothetical individual with the same characteristics as the second but to further assume this hypothetical individual could miss greater than two unscheduled days from work per month due to symptoms of pain and absenteeism. The VE testified that amount of absenteeism would likely result in termination, so there were no applicable jobs. The VE testified that his answers throughout the hearing were consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 46)

4

Before the hearing concluded, the ALJ asked if Plaintiff had anything further to say. Plaintiff stated she had written letters but would be unable to read them as they made her cry. The ALJ confirmed Plaintiff's attorney had submitted a letter, which would be included in the file. (Tr. 47; 207)

### III. Medical Evidence

#### *(a) Plaintiff's Right Ankle*

In February 2016, Plaintiff sought medical attention after she fell from her front porch. A few days after seeing personnel at an ER, she went to Mid-West Podiatry & Associates, LLC for further treatment. Plaintiff was diagnosed with a right ankle fracture. (Tr. 298) Specifically, x-rays showed a trimalleolar fracture of her lower right leg. (Tr. 299) A later CT scan revealed a comminuted oblique fracture extending through her distal fibular and lateral malleolus. There was also a coronal oriented fracture through her posterior distal tibia, which was displaced approximately 4 mm. Further, the CT scan showed a comminuted fracture involving the medial malleolus, which was up to 4 mm of displacement or distraction of the fracture fragments including approximately 4 mm displacement along the articular surface. The adjacent talus was grossly intact. The remaining osseous structures of Plaintiff's right ankle were grossly unremarkable. The distal fibula fracture showed up to 4 to 5 mm of posterior displacement of the largest posterior fracture fragment. (Tr. 311)

Plaintiff underwent surgery on February 9, 2016. The open reduction with internal fixation consisted of the implantation of a fibular plate, three 3.5 x 12 mm screws, two 3.5 x 14 mm locking screws, one 4.0 x 24 mm micro Asnis screw, one 5.0 x 38 mm micro Asnis screw, two 4.0 x 300 mm Asnis screws, and one 4.0 x 28 mm Asnis screw. (Tr. 286-89) At a follow-up examination in March, Plaintiff reported she was not really having any pain in her right ankle.

5

Her cast and staples were removed. Plaintiff was provided with a fiberglass cast, instructed to not bear weight on her right leg, and to keep the cast clean and dry until her next follow-up visit. (Tr. 294-95)

In April 2016, Plaintiff's cast had broken down because she had been walking on it despite being instructed not to do so. At a follow-up visit, she denied any pain or tenderness. The surgical site had no crepitation or instability with stressed range of motion, and the record reflects ideal correction of the deformity was apparent at the time. Her ankle was recast and she was again instructed to not bear weight on her right leg. (Tr. 359) A few weeks later, she was allowed to begin bearing weight. (Tr. 362)

At the last follow-up examination in April 2016, Plaintiff again denied pain or tenderness. There was minimal swelling and resolved ecchymosis consistent with surgical intervention. An x-ray showed reasonable alignment and fixation with healing. That assessment was Plaintiff's status post-surgery was doing well. (Tr. 363-64)

### *(b) Plaintiff's Mental Health*

The record indicates Plaintiff first sought mental health treatment in May 2013. In February 2014, Dr. Nancy McNail evaluated Plaintiff and noted she reported functioning was very difficult. Plaintiff presented with anxious/fearful thoughts, depressed mood, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue, decreased libido, paranoia, racing thoughts, restlessness, and thoughts of death or suicide. Dr. McNail diagnosed Plaintiff with recurrent major depression. Plaintiff was also prescribed Klonopin and Fetzima. (Tr. 215-16)

In March 2015, Plaintiff was admitted to a hospital for two days after a minor overdose. She was also noted as having Post-Traumatic Stress Disorder ("PTSD") and likely borderline

personality disorder in addition to her diagnosed recurrent major depression. Records reflect her Global Assessment of Functioning ("GAF") at admission was 40 and at discharge was 60. After Plaintiff was discharged from the hospital, she was prescribed Effexor, Klonopin, Trilafon, Neurontin, Bentyl, Senokot, and Colestipol. (Tr. 367)

In April 2016, Plaintiff was prescribed Klonopin, Effexor XR, and Lithium Carbonate. She did not report any side effects of her various medications. (Tr. 341-43)

### *(c) Plaintiff's Back Pain*

A March 2014 medical report noted Plaintiff presented with low back pain. She described it as chronic and constant and claimed it had been ongoing for the previous eight years. During the examination, she had pain with extension. Plaintiff could toe walk and heel walk, had negative straight leg raising bilaterally, and exhibited tenderness in the lumbar spine and sacroiliac joints. Further, her gait and station were normal. (Tr. 258-59) In April 2014, an MRI showed a 4 mm retrolisthesis of L4 on L5, a small broad-based protrusion at L4-5 with no significant central spinal canal stenosis, and mild left end minimal right L4-5 foraminal stenosis. (Tr. 271) The record does not indicate any additional treatment or referral to care with a specialist or prescription for specific medication.

### IV. The ALJ's Determination

In a decision dated August 2, 2016, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2014, the application date. The ALJ determined that Plaintiff had the following severe impairments: recurrent major depressive disorder, PTSD, borderline personality disorder, arthritis, and degenerative disc disease. However, she did not have an impairment or combination thereof that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 493)

7

After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work except she can occasionally balance, kneel, crouch, crawl, stoop and climb ramps, stairs, ladders, ropes, or scaffolds. The ALJ further found she is able to complete simple, routine tasks in a work environment free of fast-paced productivity requirements, involving simple work-related decision with few work place changes. Also, the ALJ concluded Plaintiff is able to occasionally interact appropriately with the general public, coworkers, and supervisors. However, in light of her younger age, limited education, lack of work experience, and RFC, the ALJ found that jobs in significant numbers in the national economy existed which Plaintiff could perform. These jobs include cleaner, hand packer, and production worker assembler. Therefore, the ALJ concluded that Plaintiff had not been under a disability from April 21, 2014 through the date of the decision and was not disabled. (Tr. 495-499)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that she has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R.,

Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and

9

set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[4] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

On Plaintiff's *pro se* Compliant for Judicial Review of Decision of the Commissioner of Social Security, she claims that the final decision of the Commissioner was not based on substantial evidence in the record because "[t]hey found no reason under their rules to review the administrative law judge's decision." (ECF No. 1, at ¶ IV) She provided no further explanation of how specifically she believes the ALJ erred. Plaintiff's two-page Brief in Support of the Complaint does not present an argument related to the ALJ's decision; rather, it offers unsupported assertions concerning information that was not before the ALJ. As explained by the

---

[4] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

10

Appeals Council (Tr. 2) and more fully addressed below, this additional information does not relate to the time period at issue and, therefore, cannot be considered now by the Court.

Because Plaintiff is *pro se*, and due to the judicial preference of resolving suits on the merits, the Court will review the ALJ's decision on the same argument she offered when she filed her Request for Review with the Appeals Council: "The disability in my right ankle was not adequately explored. I had surgery." (Tr. 131)

### *(a) Supplemental Information Outside Administrative Record*

In Plaintiff's Brief in Support of the Complaint, she lists her various mental health problems. (ECF No. 19, at 1) She further claims to have been hospitalized after a January 2017 suicide attempt. (*Id.*) According to Plaintiff, she was referred to outpatient psychiatric services and has been receiving psychiatric care from January 2017 to the present. (*Id.*) Specifically, she says she meets with a psychiatrist every two weeks who has prescribed various medications.[5] (*Id.*) Plaintiff's Brief in Support goes on to detail her current state of mind and alleged inability to "work or function." (*Id.* at 1-2)

Judicial review of a Social Security disability claim is limited to the evidence found in the certified administrative record. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "In the context of judicial review of a decision of the Commissioner regarding SSI disability benefits, evidence outside the administrative record generally is precluded from consideration by the court." *Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006). If a claimant presents new evidence related to his or her claims, a court may remand the

---

[5] Plaintiff apparently provided medical records concerning this information to the Appeals Council when she filed her Request for Review, which totaled approximately 237 pages. (Tr. 2)

case to the Commissioner. "Remand is appropriate only upon a showing by the claimant 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (quoting 42 U.S.C. § 405(g)).

Plaintiff has not formally requested the Court remand her case to the Commissioner. Further, she has not shown that the new evidence is material to the ALJ's decision. "To be considered material, the new evidence must be 'non-cumulative, relevant, and probative of the claimant's condition *for the time period for which benefits were denied.*'" *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (emphasis added) (quoting *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993)). The evidence Plaintiff cites to in her Brief in Support relate specifically to an alleged suicide attempt in January 2017 and subsequent hospitalization and treatment and generally to her current state of mind and alleged inability to "work or function." (ECF No. 1) This information was not part of the record before the ALJ and, therefore, cannot be the basis for reversal by this Court. As the Appeals Council indicated in its September 19, 2017 Notice: "If you want us to consider whether you were disabled after August 2, 2016, you need to apply [for SSI] again." (Tr. 2)

### *(b) The ALJ's Evaluation of Plaintiff's Ankle Disability*

In Plaintiff's Request for Review of the ALJ's decision filed with the Appeals Council, Plaintiff argued: "The disability in my right ankle was not adequately explored. I had surgery." (Tr. 131) Plaintiff does not provide further argument about what specifically she believes the ALJ failed to consider regarding her ankle injury.

The ALJ evaluated the medical records related to Plaintiff's right ankle fracture, including the circumstances surrounding Plaintiff's initial injury in February 2016 and the

specifics of each follow-up examination. Further, the ALJ's decision dated August 2, 2016 explicitly notes she underwent an open reduction internal fixation. (Tr. 493-94) The medical evidence contained in record demonstrates Plaintiff's right ankle continued to heal well post-surgery despite her failure to adhere to initial instructions to not bear weight on her right leg, which caused her first cast to break down prematurely. (Tr. 359; 363-64) Ultimately, the ALJ found Plaintiff's right ankle fracture to be nonsevere as it had not lasted for 12 months. (Tr. 493) This determination is consistent with relevant definitions of "disability" as contained in the Act itself and related regulations. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). Consequently, the Court finds that substantial evidence supports the ALJ's RFC finding and determination that Plaintiff was not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this 12th day of March, 2019.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE